**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 25-1826 & 25-1900
_____

In re: BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC,
Debtors
_____

D.S.,
Appellant in 25-1826

J.D., Claimant SST 908123,
Appellant in 25-1900


_____

Appeal from the United States District Court
for the District of Delaware
(Nos. 24-cv-00213, 24-cv-00265)
District Court Judge: Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 12, 2026
_____

Before: SHWARTZ, MASCOTT, and McKEE, <u>Circuit Judges</u>.

(Filed: July 17, 2026)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

Two Direct Abuse Claimants,[1] D.S. and J.D., elected to receive an expedited $3,500 payout (the "Expedited Distribution") to settle their claims in the Boy Scouts of America and Delaware BSA LLC ("Debtors") bankruptcy. Because the Bankruptcy Court correctly determined that Claimants' requests to change their elections and participate in a process that might lead to a greater recovery would impermissibly modify the confirmed reorganization plan (the "Plan"), they are not entitled to relief, and we will therefore affirm.

I

A

Debtors, non-profit corporations that provide adult-run youth programs, filed for bankruptcy due to numerous lawsuits alleging sexual abuse by their adult volunteers. The Plan channeled all abuse claims against Debtors to a Settlement Trust for liquidation and payment. The Plan, which incorporates the Trust Distribution Procedures (the "TDP"), provided Direct Abuse Claimants with three options for liquidation and payment of their claims, including Expedited Distribution. The Plan permits claimants to elect

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The term "Direct Abuse Claimants" refers to creditors asserting claims against Debtors that arise from various forms of improper conduct, including but not limited to sexual exploitation, sexual assault, physical abuse, and psychological abuse.

2

Expedited Distribution on the ballot, which was also used to vote for or against confirmation of the Plan. To secure the Expedited Distribution of $3,500, the TDP provides that a claimant must elect that distribution on the ballot, satisfy certain criteria, and submit documentation "to receive payment." App. 48. The TDP also (1) warns "Expedited Distribution" claimants that they "shall have no other remedies with respect to any Direct Abuse Claim he or she has against the Settlement Trust," and (2) notifies Direct Abuse Claimants who elect the Expedited Distribution that they are "not . . . eligible to receive any further distribution" for their claims. App. 48. In contrast, Claimants who "do[] not make the Expedited Distribution Election may instead elect" to pursue recovery from the two other options. App. 48.

Direct Abuse Claimants were told to read the instructions carefully before completing the ballot. The instructions informed claimants that they could elect Expedited Distribution by checking a box on the ballot. By signing the ballot, claimants acknowledged receiving a copy of the Disclosure Statement and the Plan and that, among other things, they "understand[] and, if accepting the Plan, agree[] with the treatment provided for [their] Claim(s) under the Plan." App. 65. Over 7,300 Direct Abuse Claimants elected Expedited Distribution by checking the box.

The Plan was subsequently confirmed, and the Confirmation Order was affirmed in relevant part. In re Boy Scouts of Am. & Del. BSA, LLC, No. 20-10343 (LSS), 2022 WL 20541782, at *10 (Bankr. D. Del. Sept. 8, 2022), aff'd, 650 B.R. 87 (D. Del. 2023),

3

aff'd in part, rev'd in part, dismissed in part sub nom. In re Boy Scouts of Am., 137 F.4th 126 (3d Cir. 2025).

B

After the Plan took effect, 273 Direct Abuse Claimants moved to rescind their election of Expedited Distribution and sought to participate in the other options for relief, contending they had mistakenly checked the box on their respective ballots.[2]  The Bankruptcy Court denied these requests, holding that this request constituted an impermissible modification of the Plan because "the relief sought is directly contradicted by the Plan."  In re: Boy Scouts of Am. & Del. BSA, LLC ("Boy Scouts I"), No. 20-10343 (LSS), 2024 WL 459571, at *12-13, *17-18 (Bankr. D. Del. Feb. 5, 2024), aff'd sub nom. In re Boy Scouts of Am. ("Boy Scouts II"), 772 F. Supp. 3d 496 (D. Del. 2025).

On appeal, the District Court affirmed the Bankruptcy Court's order, holding that (1) the unambiguous language of the Plan prohibits claimants from changing their Expedited Distribution elections, see Boy Scouts II, 772 F. Supp. 3d at 510; (2) the Plan is not "truly silent" regarding revocation because it did not provide that Direct Abuse Claimants could change their election once made, id. at 511; (3) even if the Plan were silent or ambiguous as to revocability, the Bankruptcy Court correctly declined to fill in any "gap" because the parties could have included revocability in the Plan's treatment of

---

[2] Both Claimants stated they did not intend to elect the Expedited Distribution and did not discuss that option with their counsel and their counsel stated that they did not realize their clients' mistakes until they accessed a portal showing their clients' elections about ten weeks before filing the revocation motions.

Expedited Distribution claimants but chose not to, id. at 511-12; and (4) accordingly, Claimants' requested relief amounted to an impermissible modification of the Plan that the Bankruptcy Court lacked the power to grant, id. at 514-16.

Claimants appeal.

II[3]

A

"In construing a confirmed plan of reorganization, we apply contract principles." In re Shenango Grp. Inc., 501 F.3d 338, 344 (3d Cir. 2007). Under Delaware law, which is the law the parties selected for interpreting the plan, "[w]hen the language of a . . . contract is clear and unequivocal, a party will be bound by its plain meaning." Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del. 2006) (alteration in original) (citation omitted). "Ambiguity is present only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Samuel J. Heyman 1981 Continuing Tr. ex rel. Lazarus S. Heyman v. Ashland LLC, 284 A.3d 714, 721 (Del. 2022) (internal quotation marks omitted).

---

[3] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a). The District Court had jurisdiction under 28 U.S.C. § 158(a)(1). We have jurisdiction under 28 U.S.C. § 158(d)(1). On appeal of orders from the Bankruptcy Court to the District Court, "we stand in the shoes of the District Court and apply the same standard of review," meaning "[w]e review the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion." In re Somerset Reg'l Water Res., LLC, 949 F.3d 837, 844 (3d Cir. 2020) (internal quotation marks omitted).

The Bankruptcy Court correctly concluded that the Plan is unambiguous regarding the nonrevocable election of Expedited Distribution. The TDP states that holders of Direct Abuse Claims who elect Expedited Distribution on their ballots are entitled to receive a one-time payment of $3,500 and the ballot clearly notified claimants that they were electing Expedited Distribution by checking the box. Neither the Plan, TDP, nor ballot provides a mechanism to rescind that election once made.[4] Rather, the TDP states that Direct Abuse Claimants who elect Expedited Distribution are "not . . . eligible to receive any further distribution" through either of the other two options for payment of Direct Abuse claims. App. 48. Accordingly, the language of the Plan does not permit claimants to rescind their Expedited Distribution elections.[5]

---

[4] Claimants argue that the "election" was not complete by checking the box on the Ballot because, under the TDP, Direct Abuse Claimants must satisfy other criteria, such as signing a release, before receiving payment. However, nothing in the TDP indicates that these criteria must be satisfied for a Direct Abuse Claimant to make an election. Instead, the TDP states that a claimant must satisfy these criteria "to receive payment." App. 47-48.

[5] To the extent there was any ambiguity regarding whether the Plan permitted claimants to rescind their Expedited Distribution elections, it was reasonable for the Bankruptcy Court to decline to conclude that the Plan impliedly provided a procedure for Claimants to revoke their initial remedy election. Delaware law allows courts to "fill gaps in the express provisions of an agreement," by "cautiously suppl[ying] implied terms" of an "implied covenant" only where (a) "the contract is silent on the subject" and (b) the parties failed to foresee the need for a term or determined that such a need was unlikely. In re El Paso Pipeline Partners, L.P. Derivative Litig., No. CIV. A. 7141-VCL, 2014 WL 2768782, at *16-18 (Del. Ch. June 12, 2014); see also Reklam v. Bellator Sport Worldwide LLC, No. CV 16-285-JFB-SRF, 2017 WL 5172397, at *5 (D. Del. Nov. 8, 2017), report and recommendation adopted, No. 1:16CV285, 2017 WL 5985562 (D. Del. Dec. 1, 2017). Gap filling is not warranted here because it grants parties "contractual

B

If granted, the relief Claimants seek would modify the Plan which, as creditors, they cannot do. A confirmed plan binds all parties in interest and may be modified only by the plan's proponents or reorganized debtor. See 11 U.S.C. §§ 1127(b), 1141(a); In re Rickel & Assocs., Inc., 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) (stating § 1127(b) is the only way to modify a confirmed plan). Thus, creditors are "precluded by the [Bankruptcy] Code from requesting modification of the Plan." In re Port Liberte Partners, No. CIV. A. 94-4854, 1995 WL 11186, at *5 (D.N.J. Jan. 5, 1995), aff'd sub nom. In re Port Liberte, 77 F.3d 463 (3d Cir. 1996).

The Plan incorporates the TDP process for elections of remedies, so the Claimants' request to revoke their selections—which are irrevocable under the Plan— effectively seeks to modify the Plan. See Matter of Allied Supermarkets, 21 B.R. 45, 48 (Bankr. E.D. Mich. 1982) (denying creditor's request to file a tardy ballot because "revoking [his] earlier election" is "an attempt to modify the Plan"); see also In re SC SJ Holdings, LLC, No. 21-10549 (JTD), 2023 WL 2598842, at *5 (D. Del. Mar. 22, 2023) (denying "motion for relief [that] really sought a modification of the Plan" because, even

protections that they failed to secure for themselves at the bargaining table." Aspen Advisors LLC v. United Artists Theatre Co., 843 A.2d 697, 707 (Del. Ch. 2004), aff'd, 861 A.2d 1251 (Del. 2004). First, the parties considered whether to provide for the opportunity to rescind an Expedited Distribution election at a hearing prior to confirming the plan but chose not to. Second, it was reasonable to conclude that the Plan was not truly silent on the issue because the Plan did not use conditional terms but instead gave claimants a choice without providing a means to change their elections once made.

though the change was minor, it amounted to "[a] change contrary to the express provisions of the Plan"), aff'd sub nom. In re SC SJ Holdings, LLC, No. 23-1731, 2024 WL 1328233 (3d Cir. Mar. 28, 2024), cert. denied sub nom. SC SJ Holdings, LLC v. Pillsbury Winthrop Shaw Pittman, LLP, 145 S. Ct. 277 (2024). As creditors, however, they cannot seek to modify the Plan. 11 U.S.C. § 1127(b); In re Port Liberte, 1995 WL 11186, at *5. Accordingly, the Bankruptcy Court correctly determined that Claimants are not entitled to relief.[6]

## III

For the foregoing reasons, we will affirm.

---

[6] Section 105 of the Bankruptcy Code generally affords Bankruptcy Courts broad discretion to grant relief, but a bankruptcy court cannot exercise this discretion in a way that violates § 1127. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.'"). As stated herein, under § 1127, creditors may not modify the Plan.

Similarly, although Federal Rule of Civil Procedure 60(b)(1) permits a court to grant relief where a movant seeks relief from an order on the basis of "mistake," Fed. R. Civ. P. 60(b)(1), such a rule of procedure cannot "negate the substantive impact of the restriction contained in" the Bankruptcy Code, In re Fesq, 153 F.3d 113, 117 (3d Cir. 1998).

8